**In re Renee Michelle McELROY a/k/a Renee M. Lindsey, a/k/a Renee M. Harris, Debtor.**

**Mark Thomas McElroy, Plaintiff,**

**v.**

**Renee Michelle McElroy a/k/a Renee M. Lindsey, a/k/a Renee M. Harris, Defendant.**

Bankruptcy Nos. 97–6922–BKC–3F7. Adversary No. 97–415.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Oct. 9, 1998.

W. Thomas Copeland, Jacksonville Beach, FL, for plaintiff.

Albert H. Mickler, Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court upon a Petition to Determine Dischargeability Pur-

suant to 11 U.S.C. § 523(a)(15) filed by Mark Thomas McElroy ("Plaintiff") on December 15, 1997. (Doc. 1.) Based upon the evidence presented and the argument of counsel, the Court enters these findings of fact and conclusions of law.

## FINDINGS OF FACT

Renee Michelle McElroy ("Defendant") filed her Chapter 7 petition on September 11, 1997. Defendant listed $600.00 of total assets and $65,730.40 of total liabilities. (Pl.'s Ex. 1.) Included in Defendant's listing of liabilities was $6,124.76 of unliquidated debt owed to Plaintiff, as a co-debtor, for an obligation to Toyota Motor Credit Corporation ("Creditor") for an automobile, a 1994 Lexus ES 300, which was previously repossessed. Defendant's Schedule I—Current Income of Individual Debtor lists a total monthly income of $2,243.76 [1], which includes $500.00 per month of child support. Defendant's Schedule J—Current Expenditures of Individual Debtors provides for $1,985.00 of monthly payments.[2]

Plaintiff and Defendant were divorced on June 6, 1995. Florida Circuit Court Judge Karen K. Cole entered a Final Judgment of Dissolution of Marriage on that day providing, in the pertinent part, that: "The wife shall have sole responsibility for the debt and lease on her 1994 Lexus automobile, and shall hold the husband harmless therefrom." (Pl.'s Ex. 3.) Around October of 1995, Defendant "turned in" the automobile, with $6,024.76 still owed to Creditor. Creditor, and subsequently a collection agency, then pursued Plaintiff for the balance owed plus interest. Eventually, Plaintiff and a collection agency began to settle the matter. After paying $150 toward this debt over a three-month period, Plaintiff ceased all payment on the debt owed to Creditor.

Defendant is married with two children from previous marriages and has three step-children. Plaintiff is married with two children, one with the Defendant. Both Plaintiff and Defendant are fiscally irresponsible, living entirely above their means. Plaintiff and Defendant have been involved in an extensive custody battle resulting in attorney's fees in the tens of thousands of dollars. Defendant was also involved in a custody battle for her daughter from another marriage. These custody battles financially strained the Defendant, leading her to file bankruptcy.

Defendant earned $44,000.00 as the manager of a large apartment complex before her divorce to the Plaintiff. Subsequently, in July of 1995 she lost that job and has been unable to obtain comparable employment since that time.[3] Defendant is currently unemployed. To pay for attorney fees to fight for the custody of her children, Defendant claims to have sold furniture and other belongings, primarily to her mother and stepfather, for cash. Defendant also claims to have pawned jewelry. Defendant claims to have no personal checking account, rather she deposits all earnings in accounts belonging to her mother and a friend. Defendant then writes checks or has checks written out of these accounts to pay her bills. There was no accounting of Defendant's contributions to these accounts made to the Court. These accounts are the focus of a separate adversary proceeding arising out of Defendant's petition for bankruptcy. Adversary Proceeding # 97–416, addressed in separate findings of fact and conclusions of law, concerns objections to discharge under 11 U.S.C. § 727(a)(2) and (a)(4) filed by Aaron R. Cohen, Trustee.

Plaintiff plans to attend school to become a physical therapist. He applied for student loans to support this endeavor. Plaintiff claims he was unable to obtain any student loans solely because of the debt owed to Creditor. Plaintiff presented no proof to support this claim. Plaintiff, without any supporting evidence, denied that fiscal irre-

---

1. Defendant was employed when she filed these schedules. At the time of the hearings for this proceeding, Defendant was unemployed.

2. These payments include $435.00 per month for rent, $481.00 per month for transportation (this represents payment to her mother for use of her mother's automobile), $75.00 per month for auto insurance, $200.00 per month for food, and $600.00 per month for day care.

3. Defendant's tax returns for 1996 and 1997, listed $17,014.00 and $17,468.00, respectively, as income. (Def.'s Ex. 1,2.)

sponsibility, which includes almost $30,000 in credit card debt, a luxurious food plan, a first mortgage, a second mortgage, two car payments and costs of living, balanced with no substantial assets, had anything to do with the denial of his application for student loans.

Plaintiff's Petition to Determine Dischargeability Pursuant to 11 U.S.C. § 523(a)(15) claims Defendant has the ability to pay the debt owed to creditor and that discharging such debt would not benefit Defendant to an extent outweighing the detrimental consequences to the former spouse. Defendant denies these claims.

## CONCLUSIONS OF LAW

■ Plaintiff seeks to have the debt owed to Plaintiff under the Final Judgment of Dissolution of Marriage for their obligation to Creditor deemed nondischargeable pursuant to Section 523(a)(15) of the Bankruptcy Code. Section 523(a)(15) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; ....

11 U.S.C. § 523(a)(15) (West 1998). The exceptions to the dischargeability of a debt are to be strictly construed in favor of debtors. *Christison v. Christison (In re Christison),* 201 B.R. 298, 307 (Bankr.M.D.Fla.1996) (citing *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986)).

■ There is disagreement among the bankruptcy courts as to who bears the burden of proof under Section 523(a)(15). This Court favors the majority view and follows the analysis applied by the court in *Christison* in addressing an exception to discharge under Section 523(a)(15) of the Bankruptcy Code. This view allocates the initial burden to the creditor spouse to show that the spouse holds a claim which is not of the kind described in 11 U.S.C. § 523(a)(5) but rather "was incurred by debtor in connection with a divorce decree or separation agreement." *Christison,* 201 B.R. at 307. *See also Stone v. Stone (In re Stone),* 199 B.R. 753 (Bankr. N.D.Ala.1996). If this burden is met, then the burden shifts to the debtor to show that either the debtor does not have the ability to pay, or the benefit to the debtor of discharge of the debt outweighs the detriment caused to the creditor spouse. *Id.* at 308.

The Final Judgment of Dissolution of Marriage entered June 6, 1995, stating that: "[T]he wife shall have sole responsibility for the debt and lease on her 1994 Lexus automobile, and shall hold the husband harmless therefrom", is indisputably a division of marital assets and not alimony or support. Once the existence of a debt subject to 523(a)(15) is demonstrated, which has been done by Plaintiff, the burden shifts to the debtor to show by a preponderance of the evidence that she comes within one of the exceptions under Section 523(a)(15)(A) or (B). *Christison,* 201 B.R. at 307; *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). Defendant must show that she does not have the ability to pay or that the benefit to her of discharge of the debt outweighs the detriment caused to the Plaintiff.

■ The date to analyze these 523(a)(15) tests is at or about the time of trial. *Christison,* 201 B.R. at 308 (citing *Collins v. Hesson (In re Hesson),* 190 B.R. 229, 238 (Bankr.D.Md.1995)). Changed circumstances among the parties from the time of the petition date should be considered. Defendant must show by a preponderance of the evidence one of the two alternative exceptions in order to have the debt otherwise nondischargeable under Section 523(a)(15)

deemed dischargeable. *Id.* at 309 (citing *Woodworth v. Woodworth (In re Woodworth)*, 187 B.R. 174, 177 (Bankr.N.D.Ohio 1995)).

Section 523(a)(15)(A) provides for dischargeability of a debt where a debtor can show by a preponderance of the evidence that she has no ability to pay the debt after taking into consideration amounts reasonably necessary for the support of debtor and her dependents. In examining the debtor's ability to pay a Section 523(a)(15) debt, some courts apply the "undue hardship" test under 523(a)(8) for student loans. *Id.* (citing *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr.W.D.Mo.1995)). Other courts apply the "disposable income" test of Section 1325(b), permitting confirmation of a Chapter 13 plan over creditor objections when all the debtor's projected disposable income is used to fund the plan payments. *Id.*

This Court applies the disposable income test for 523(a)(15). The language of Section 523(a)(15)(A) mirrors that of Section 1325(b)(2). *Id.* at 310 (citing *Hill v. Hill (In re Hill)*, 184 B.R. 750, 755 (Bankr.N.D.Ill. 1995)). The focus becomes whether the debtor's budgeted expenses are reasonably necessary. The Court in *Christison* stated:

> The legislative history of Section 523(a)(15) supports a holding that Congress did not intend to force debtors with obligations under domestic property settlements into a poverty state but instead intended to require these debtors to pay obligations to former spouses under property settlement agreements if they could also pay the normal and reasonable everyday living expenses for themselves and their new families.

*Id.* at 309.

Under Section 523(a)(15)(A), income of the debtor's current spouse is irrelevant to debtor's ability to pay. *Id.* at 310 (citing *Carter v. Carter (In re Carter)*, 189 B.R. 521, 522 (Bankr.M.D.Fla.1995). However, a current spouse's income "may be considered in relation to reasonably necessary expenses incurred for debtor's own support—particularly those incurred jointly or since the date of the marriage." *Id.*

Defendant is currently unemployed and has no income. She and her current husband rent a mobile home from her mother and stepfather. She uses an automobile titled in her mother's name and makes the loan payment on that automobile for such use. She receives some child support income, but this only covers some of the expense of supporting and raising her two children. The evidence presented does not provide a full balance sheet of expenses and income. However, the preponderance of the evidence shows that Defendant has no disposable income. The record shows that Defendant does not have the ability to pay the debt to Creditor after taking into consideration amounts reasonably necessary for the support of debtor and her dependents. Therefore, this Court finds that Defendant meets the requirements of Section 523(a)(15)(A) of the Bankruptcy Code and is entitled to discharge of the debt owed to Plaintiff.

Section 523(a)(15)(B) sets forth a balancing test requiring a debtor to show that the benefit of discharging the debtor's debt outweighs the detrimental consequences of discharge to the creditor spouse. The Court in *Christison* stated:

> This analysis requires the court to evaluate the lifestyles of the parties and make value judgments concerning what is 'fair.' ...
>
> This subsection, therefore, creates an 'illusory statutory standard' requiring an objective weighing of a perceived subjective benefit of discharge against possible adverse circumstances accruing to the creditor spouse.
>
> Balancing these requirements requires a review of the totality of the circumstances in comparing the financial situation of both parties and considering any other relevant subjective factors. The court in essence determines the 'relative impact of discharging the obligation'.

*Id.* (citations omitted). Factors considered in making this determination include: (1) income and expenses of both parties, (2) whether the nondebtor spouse is jointly liable on the debts, (3) the number of dependents, (4) the nature of the debts; the reaffirmation

of any debts, and (5) the nondebtor spouse's ability to pay. *Id.* at 311.

Because the Court finds Defendant has met her burden concerning Section 523(a)(15)(A), it is unnecessary to address whether the benefit to the Defendant of discharge of the debt outweighs the detriment caused to the creditor spouse. However, this Court finds in viewing the totality of the circumstances that the benefit of discharge of this debt outweighs the detriment caused to the Plaintiff.

For the reasons discussed above, the Court finds that the debt owed to Plaintiff is not excepted from discharge under Section 523(a)(15) of the Bankruptcy Code. A separate order will be entered in accordance with the foregoing.